IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:09-cv-445 |
| | ) | |
| JAMES W. CARELL, ROBERT VINING, | ) | Judge Thomas A. Wiseman, Jr. |
| DIVERSIFIED HEALTH MANAGEMENT, INC. | ) | |
| (also known as CAREALL MANAGEMENT, LLC), | ) | |
| THE JAMES W. CARELL FAMILY TRUST, | ) | |
| CAREALL, INC., VIP HOME NURSING AND | ) | |
| REHABILITATION SERVICES, LLC (also known | ) | |
| as VIP HOME NURSING AND REHABILITATION | ) | |
| SERVICES, INC.), PROFESSIONAL HOME | ) | |
| HEALTH CARE, LLC (also known as | ) | |
| PROFESSIONAL HOME HEALTH CARE, INC.), | ) | |
| and UNIVERSITY HOME HEALTH, LLC (also | ) | |
| known as UNIVERSITY HOME HEALTH, INC.), | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court are four separate Motions to Dismiss the Second Amended Complaint in this Action, filed respectively by Defendants James W. Carell ("Carell") and CareAll, Inc. ("CareAll") (Doc. No. 88); CareAll Management, LLC f/k/a Diversified Health Management, Inc. ("Diversified") (incorrectly named in the Complaint as "Diversified Health Management, Inc. (also known as CareAll Management, LLC)") and the James W. Carell Family Trust (the "Trust") (Doc. No. 90); VIP Home Nursing and Rehabilitation Services, LLC, Professional Home Health Care, LLC ("Professional") and University Home Health, LLC (collectively, the "Home Health Agencies") (Doc. No. 91); and Robert Vining individually (Doc. No. 92). For the reasons set forth herein, those motions will be denied. Further, because these motions supersede the previously filed motions to dismiss the first Amended Complaint, the still-pending portions of the motions filed by Carell and CareAll (Doc. No. 74) and the Trust (Doc. No. 78), addressing the common-law claims as set forth in the first Amended Complaint, will be denied as moot, and the other still-pending motions to dismiss (Doc. Nos. 67, 70, and 76) pertaining to the common-law claims as stated in the Government's first Amended Complaint will be denied as moot in their entirety.

I.      PROCEDURAL BACKGROUND

Plaintiff United States of America (the "Government") filed its original Complaint in this action on May 18, 2009, asserting various violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–3733, against three of the eight defendants (Carell, Diversified, and the Trust), as well as a right to recover damages under common-law theories of unjust enrichment and payment by mistake of fact against all of the defendants.  The Government filed its first Amended Complaint on July 30, 2009.  In an Order entered October 13, 2009 (Doc. No. 86), the Court denied the Defendants' motions to dismiss the FCA claims asserted against Carell, Diversified, and the Trust on statute-of-limitations grounds, and also denied the Trust's motion to dismiss the claims against it for failure to state a claim based on an alter ego theory of recovery.

In addition, the Court considered the Defendants' motions to dismiss the Government's state-law claims for unjust enrichment and payment by mistake asserted against all the Defendants.  The Court, however, "deferred" ruling on the motions to dismiss insofar as they addressed those claims and instead granted the Government two weeks within which to file a second amended complaint alleging facts that indicated when the final audits and NPRs were issued for the cost reports at issue, if ever, and if they were not issued, why not.  The end result of the earlier Order was that the motions filed by Carell and CareAll (Doc. No. 74) and by the Trust (Doc. No. 78) were denied in part and deferred in part.  The Court deferred ruling on the motions filed by Vining (Doc. No. 67), the Home Health Agencies (Doc. No. 70), and Diversified (Doc. No. 76), which addressed only the common-law claims asserted by those defendants, in their entirety.

Despite its deferral of the motions, the Court nonetheless reached the following holdings in addressing the motions to dismiss the common-law claims for unjust enrichment and payment by mistake: (1) that the six-year statute of limitations prescribed for claims against the United States related to express or implied contracts set forth 28 U.S.C. § 2415(a) applied to the Government's common-law claims; and (2) that a cause of action for Medicare overpayment generally does not accrue, and the statute of limitations for bringing a claim for Medicare overpayment does not begin to run, until the Government's fiscal intermediary charged with administering the Medicare benefits at issue conducts a comprehensive final audit of the cost report and issues a written Notice of Program Reimbursement

("NPR"). The Government's Amended Complaint, however, did not indicate when the final audits were conducted or when the NPRs were issued, if ever, for the cost reports that are the subject of the Government's claims, or whether Palmetto, the fiscal intermediary, had made a demand for repayment at any time prior to issuance of the NPR. Consequently, the Court granted the Government's request to file a Second Amended Complaint to address these deficiencies.

The Government promptly filed its Second Amended Complaint (Doc. No. 87) on October 27, 2009. The Government's basic factual allegations were discussed in some detail in the Court's October 13, 2009 Memorandum Opinion and will not be set forth again here, except insofar as they are relevant to the present motion. The Second Amended Complaint contains the following new (or amplified) allegations intended to address the above-noted deficiencies:

> 4. The causes of action alleged in this complaint are timely brought within the applicable limitations period due to: (a) the dates of the actions of Defendants; (b) the dates that the relevant notices of program reimbursements (NPR)s [sic] were issued; (c) the time frame within which officials of the United States charged with the responsibility to act under the circumstances knew the essential elements of the subject causes of action; and (d) tolling agreements executed by three of the Defendants.
>
> 5. Medicare makes interim payments to providers before a cost report is submitted. After the cost report is filed, the fiscal intermediary examines the cost report, conducts a review or audit, and may furnish the provider with a written NPR. The NPR explains the intermediary's conclusions, how these conclusions may differ from the provider's conclusions, and includes the total amount of reimbursement, if any, that is due. The NPR is the intermediary's final determination on the cost report. The relevant common law statute of limitations on a claim begins to run on the date of the issuance of the NPR.
>
> 6. Specifically, the NPR issued for Professional's fiscal year 1999 cost report on June 3, 2005 and for Professional's fiscal year 2001 cost report on September 24, 2004. There were no other NPRs issued for the cost reports at issue in this case, and therefore no other audits were issued. This is because on September 12, 2005, a suspension was placed on the other cost report files at issue at the request of the United States Department of Health and Human Services (HHS) due to its commencement of a fraud and abuse investigation. Therefore, the relevant common law statute of limitations in this case did not expire until, at the earliest, September 24, 2010.

(2d Am. Compl., Doc. No. 87, at ¶¶ 4–6.)

The Second Amended Complaint also continues to allege, as did the first Amended Complaint, facts that pertain to the potential tolling of the statute of limitations:

> 7. Officials of the United States charged with responsibility to act under the circumstances . . . did not know about, and should not have reasonably known about, facts material to this right of action until August 22, 2005, when this case was first referred to an official with the Criminal Division of the United States Attorney's Office, or alternatively, until October 4, 2005, when this case was first referred to an official with the

> Civil Division of the United States Attorney's Office. Additionally, since then, Defendants James W. Carell, Diversified Health Management, Inc., and the James W. Carell Family Trust entered into three separate tolling agreements with the United States that tolled the statute of limitations for causes of action under the False Claims Act and common law for the following periods: (a) October 30, 2006 through May 1, 2007, (b) February 6, 2009 through April 20, 2009, and (c) April 20, 2009 through May 18, 2009.

(2d Am. Compl. ¶ 7.)

Defendants now seek dismissal of the Second Amended Complaint. While also preserving their objections to the Government's FCA claims on timeliness grounds, Defendants assert in the present round of motions that (1) the Government's claims related to all eight of the cost reports that are at issue in this suit are subject to dismissal as untimely, because the claims accrued when the alleged overpayments were made, more than six years before the date the initial complaint in this action was filed; and (2) alternatively, with respect to those cost reports for which no NPR was ever issued (six of the eight that are the subject of the Government's claims), the Government's claims have not yet accrued and must therefore be dismissed as unripe. The Court rejects both of these arguments, as discussed below.

## II.    ANALYSIS AND DISCUSSION

As this Court noted in addressing Defendants' first round of motions to dismiss, although a 12(b)(6) motion is generally not an appropriate vehicle for raising an affirmative defense, *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004) (citations omitted), a plaintiff may incur an "obligation to plead facts in avoidance of the statute of limitations defense" when it is otherwise "'apparent from the face of the complaint that the time limit for bringing the claim[s] has passed.'" *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 518 (6th Cir. 2008) (quoting *Hoover v. Langston Equip. Assocs., Inc.*, 958 F.2d 742, 744 (6th Cir. 1992)). In such a case, a motion to dismiss may appropriately be grounded upon a plaintiff's failure to plead tolling or other facts showing the claims are not barred by the statute of limitation.

Here, the Government's claims were initially framed in such a manner that the Government incurred an obligation to plead facts in avoidance of the statute of limitations defense. The Government, having availed itself of two opportunities to amend its complaint, has now pleaded facts that meet that requirement. The issue that Defendants raise in their current round of motions is whether, as a matter of law based on the as-yet undisputed allegations in the Government's Second Amended Complaint, the Government's claims are either premature, having not yet accrued, or, alternatively, are barred by the

applicable statute of limitations.  Though characterized by Defendants as Rule 12(b)(6) motions for dismissal for failure to state a claim, the motions might more accurately be described as motions for judgment as a matter of law.

In its earlier ruling, this Court held that the statute of limitations in § 2415 for common-law claims based on Medicare overpayment generally does not begin to run until the date of the fiscal intermediary's final determination and issuance of the NPR.  The Court noted that this conclusion as to when the statute begins to run is the "'prevailing view' among courts that have seriously considered the issue," as "it is only at that point that the Government can legally require a provider to repay an overpayment."  (Doc. No. 85, at 3.)  Defendants continue to argue in their present round of motions that the Government's claims accrued and the statute of limitations began to run, instead, on the date payment was made on the subject cost reports.  The Court already addressed that argument and declines to revisit it here. Consequently, it is clear that the claims based upon Professional's fiscal years 1999 and 2001 cost reports, for which the NPRs issued respectively on June 3, 2005 and September 24, 2004 are not barred by the six-year statute of limitations.  The motions to dismiss, insofar as they are addressed to the claims premised on Professional's 1999 and 2001 cost reports, will be denied on that basis.

In the alternative, assuming that the statute of limitations does not ordinarily begin to run until NPRs are issued, Defendants argue that the Government's claims based upon the six cost reports for which NPRs were never issued have not yet accrued, and that those claims must therefore be dismissed as unripe.  Defendants cite to no case law in support of this argument other than to those cases upon which this Court relied to decide that, as between the date payments are made and the date NPRs are issued, it makes more sense for the statute of limitations to begin to run on the date NPRs are issued.[1] Those cases do not address, and are not relevant to, situations in which an NPR has never been issued

---

[1] The Court also acknowledged that a claim might accrue earlier under different factual scenarios.  *See, e.g.*, *United States v. Robert's Nursing Home*, 710 F.2d 1275 (7th Cir. 1983) (holding under the specific facts of that case that the Government's cause of action for overpayment accrued when the fiscal intermediary, acting on behalf of the Government, determined that a provider had been overpaid under the Medicare program and that an obligation was due and owing to the Government, and sent a letter demanding payment in a specific amount prior to conducting a final audit or issuing an NPR; the Seventh Circuit also noted that its holding was not necessarily in conflict with *United States v. Gravette Manor Homes*, 642 F.2d 231 (8th Cir. 1981), and the line of cases holding that the Government's cause of action to recover an overpayment does not accrue until the final audit was completed).

*and is never likely to be issued.* As a result, Defendants' position is patently untenable as a matter of common sense and public policy: It would mean that, in cases in which a file is suspended and an NPR is never issued, the Government's claims would never accrue.

Here, the Government has clearly stated in the Complaint that, as of September 12, 2005, the other cost report files at issue were suspended, at the request of the Department of Health and Human Services, due to a commencement of an investigation into the Defendants' potentially fraudulent practices, which, for pleading purposes at least, constitutes a reasonable alternative date for the accrual of its claims in a situation where no NPR is likely to be issued.

Alternatively, even if that were not the case, the Government has also alleged that United States officials charged with the responsibility to act under the circumstances "did not know about, and should not reasonably have known about, facts material to this right of action" until, at the earliest, August 22, 2005. These allegations, again for pleading purposes, are sufficient to trigger the tolling provision set forth in 28 U.S.C. § 2416(c), which states in pertinent part: "For the purpose of computing the limitations periods established in section 2415, there shall be excluded all periods during which . . . facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances."

In sum, the Court concludes that the Second Amended Complaint adequately alleges facts which, if true, would mean that the statute of limitations has not run on any of the common-law claims, either because (1) the statute did not begin to run until the date the cost report files at issue were suspended for purposes of referring the matters for investigation; or (2) the tolling provision of § 2416(c) applies.

III.   **CONCLUSION**

For the reasons stated herein, the motions to dismiss the claims for unjust enrichment and payment by mistake on the grounds that the Government's allegations in the Second Amended Complaint establish that these claims have either not yet accrued or, alternatively, are untimely, will be denied. An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge