# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:09-0445 |
| ) | Judge Thomas A. Wiseman, Jr. |
| JAMES W. CARELL, ROBERT VINING, ) | |
| DIVERSIFIED HEALTH MANAGEMENT, ) | |
| INC. (also known as CAREALL ) | |
| MANAGEMENT, LLC), THE JAMES W. ) | |
| CARELL FAMILY TRUST, CAREALL, INC., ) | |
| VIP HOME NURSING AND ) | |
| REHABILITATION SERVICES, LLC ) | |
| (also known as VIP HOME NURSING AND ) | |
| REHABILITATION SERVICES, INC.), ) | |
| PROFESSIONAL HOME HEALTH CARE, ) | |
| LLC (also known as PROFESSIONAL HOME ) | |
| HEALTH CARE, INC.), and UNIVERSITY ) | |
| HOME HEALTH, LLC (also known as ) | |
| UNIVERSITY HOME HEALTH, INC.), ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

This is an action brought by the United States seeking to recover damages and civil penalties for the alleged overpayment of Medicare reimbursements to Defendants. The United States has filed a four-count Second Amended Complaint in which it asserts in Counts I and II that Defendants James W. Carell ("Mr. Carell"), Diversified Health Management ("Diversified"), and the James W. Carell Family Trust ("the Family Trust") are liable under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729(a)(1)(A) & (a)(1)(B), and, in Counts III and IV, that all Defendants are liable under the common law for "payment by mistake of fact" and unjust enrichment. Mr. Carell and Diversified have filed Motions for Partial Judgment on the Pleadings (Docket Nos. 204 & 208), seeking

1

dismissal of the FCA claims. Those Motions have been fully briefed by the parties (Docket Nos. 205, 211 & 213), and will be denied.

## I. FACTUAL BACKGROUND

Because the Motions for Partial Judgment on the Pleadings present primarily legal issues, the relevant factual allegations in the Second Amended Complaint need only be summarized briefly. Construed in Plaintiff's favor, those allegations are as follows.

Medicare is a federally-funded health insurance program administered by the Department of Health and Human Services. It contracts with intermediaries to reimburse providers for services provided to Medicare beneficiaries. In this case, Palmetto Government Benefit Administrators, LLC ("Palmetto") was the intermediary under contract to administer the Medicare program for home health and hospice benefits in Tennessee. (Docket No. 87, Second Amended Complaint ¶ 18).

Intermediaries, like Palmetto, make interim payments to providers throughout the year based upon the estimated costs for providing services and treatment to Medicare patients. At the end of the fiscal year, the provider submits a Cost Report to the intermediary which is supposed to reflect the actual cost expended on Medicare patients and is the final claim for reimbursement. (Id. ¶¶ 5 & 19).

Each Cost Report contains a "Certification" that must be signed by an officer, director or responsible designee of the provider, certifying that the Cost Report is true and correct. At all times material to this dispute, the certification page specifically informed the provider that "[m]isrepresentation or falsification of any information contained in this cost report may be punishable by criminal, civil, and administrative action, fine and/or imprisonment under federal law." (Id. ¶ 22).

2

Once the Cost Report is filed, the intermediary examines the report and issues a Notice of Program Reimbursement ("NPR") which explains the intermediary's conclusions about the Cost Report, and includes the amount of reimbursement, if any, which is due the provider. (Id. ¶ 5). Further, the intermediary, on behalf of Medicare, has the right to audit the Cost Report as submitted, and any financial representations made by the providers. The intermediary makes a retroactive adjustment if an overpayment is found to have been made. (Id. ¶ 20).

Until September 30, 2000, Medicare reimbursed home health agencies for all allowable costs of direct patient care to Medicare beneficiaries (such as nursing care, home health aides, and occupational and physical therapy), and for reasonable administrative expenses associated with such care. As part of the Cost Report, home health agencies providing Medicare services were required to declare whether or not they conducted business transactions with related companies or organizations, including the purchasing of facilities, supplies or services.

A home health agency is related to another company or organization if the provider has control over, or is controlled to a significant extent by, the company or organization furnishing the facilities, supplies or services. A provider can only be reimbursed by Medicare for the actual cost incurred, and is not entitled to a profit when a related party provides the service. (Id. ¶¶26-28).

At issue in this case are billings and eight Cost Reports for the fiscal years 1999, 2000, and 2001, submitted by (or on behalf of) Defendants VIP Home Nursing and Rehabilitation Services, LLC ("VIP"), Professional Home Health Care, LLC ("Professional"), and University Home Health, LLC ("University") (collectively the "home healthcare entities"). Plaintiff alleges that Defendant Robert Vining ("Mr. Vining") was the "sham owner" of those home healthcare entities and reached an agreement with Mr. Carell, a longtime acquaintance, whereby Mr. Carell and his company,

3

Diversified, would have total control over the operation of the home healthcare entities.

The purpose of the arrangement, Plaintiff contends, was to evade the rule that limited a home health agency owner's compensation, but not the fees of a management company. To further the alleged scheme, Mr. Carell and Diversified allegedly caused Cost Reports to be submitted and signed by the administrators of each home healthcare entity which included large, but improper, management fees. (Id. ¶¶ 23 & 39-40). In essence, Plaintiff alleges that the eight Cost Reports at issue were filed at the behest of Mr. Carell and Diversified by the home healthcare entities and were "false" because they (1) improperly billed Medicare for disallowed costs of Diversified, a related party, and (2) improperly concealed the fact that Diversified was a related party of the three home healthcare entities. Plaintiff alleges that, all totaled, Defendants' scheme caused Medicare to pay the home healthcare entities close to $6.3 million more than they were entitled to receive.

## II. STANDARD OF REVIEW

Motions for judgment on the pleadings are analyzed under the standards which govern motions to dismiss for failure to state a claim. Sensations, Inc. v. City of Grand Rapids, 526 F.3d 291, 295 (6th Cir. 2008). The Court accepts the complaint's allegations as true, and construes those allegations in the plaintiff's favor. However, to survive a motion to dismiss, or for judgment on the pleadings, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 550 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III. APPLICATION OF LAW

4

As indicated, the Motions for Judgment on the Pleadings are directed to the FCA claims, as set forth in Counts I and II of Plaintiff's Second Amended Complaint. Prior to addressing the viability of Plaintiff's FCA claims, however, the Court sets forth the timing and import of certain events which are of some significance in analyzing the specific arguments raised by the parties.

This litigation was filed on May 18, 2009. In the original Complaint, Plaintiff alleged in Count I that Mr. Carell, Diversified, and the Family Trust violated 31 U.S.C. § 3729(a)(1) which, so far as is relevant, makes it unlawful to "knowingly present[] or cause to be presented to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." In Count II, Plaintiff alleged those same Defendants violated 31 U.S.C. § 3729(a)(2) which provides penalties for any person who "knowingly makes, uses, or caused to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the government."

At the time of filing of the initial Complaint, the Supreme Court in Allison Engine Co., Inc. v. United States *ex rel.* Sanders, 128 S. Ct. 2123, 2128-29 (2008), had decided that the "to get a false or fraudulent claim paid or approved by the Government" language in Section 3729(a)(2) required that the providers of the services or goods intend that the government itself pay the claim, and not merely show that a false statement resulted in the use of government funds to pay the false claim. The District of Columbia Circuit in United States *ex rel.* Totten v. Bombardier Corp., 380 F.3d 448 492-93 (D.C. Cir. 2004), had also concluded that, for purposes of the presentment language in Section 3729(a)(1), a provider's presentation of a fraudulent claim to the National Railroad Passenger Corporation (Amtrak) did not constitute the presentation of a fraudulent claim "to an officer or employee of the United States Government," because Amtrak is a federal grantee and not a federal governmental entity.

5

On May 20, 2009, two days after the Complaint was filed in this case, Congress passed the Fraud Enforcement and Recovery Act ("FERA"). Pub. L. No. 111-21, 123 Stat. 1617 (2009). In enacting FERA, Congress made a number of changes to the FCA in order to "clarify and correct erroneous interpretations of the law that were decided in" <u>Allison Engine</u> and <u>Totten</u>. S. Rep. 111-10 at 10.

Germane to this case, Section 3792(a)(2) was renumbered as Section 3729(a)(1)(B) and amended to expand liability to anyone who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C.A. § 3729(a)(1)(B). That is, Congress eliminated the "to get" language which was central to the decision in <u>Allison Engine</u>, and imposed liability on those who submit statements which are material to the receipt of government funds. Congress provided that this amendment "shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act that are pending on or after that date." Pub. L. No. 111-21, 123 Stat. at 1625.

Additionally, Section 3729(a)(1) was renumbered as Section 3729(a)(1)(A). The language "presents or causes to be presented to an officer or employee of the United States government" was replaced by "any person who knowingly presents, or causes to be presented a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). This amendment was not made retroactive and applies only to conduct "on or after enactment of th[e] Act." Pub. L. No. 111-21, 123 Stat at 1625.

After the enactment of FERA, Plaintiff twice-amended its Complaint. In both iterations, and in keeping with the amendments brought about by FERA, Plaintiff alleged, in Count I, that Mr. Carell (and his "alter ego" the Family Trust) and Diversified presented false claims in violation of

Section 3729(a)(1)(A), and , in Count II, that those Defendants used false statements in violation of Section 3729(a)(1)(B).

Against this backdrop, the Court turns to the arguments raised by the parties. In doing so, the Court first considers Count II because analysis of that claim provides a segue to the arguments raised in relation to Count I.

**A. Count II – 31 U.S.C. § 3729(a)(2) / 31 U.S.C. § 3729(a)(1)(B)**

In Count II of the Second Amended Complaint, Plaintiff alleges that Mr. Carell and Diversified "knowingly or recklessly made, used, or caused to be made or used false records or statements to get false or fraudulent claims approved by the United States through its Medicare program." (Second Amended Complaint, Docket No. 87 at ¶ 63). Defendants appear to concede that Count II sets forth a plausible claim under the amendment brought about by FERA,[1] but argues that judgment in their favor is warranted because Plaintiff cannot show Defendants' allegedly false statements were made with the specific intent that the government itself rely on the statements as required by the Supreme Court's interpretation of Section 3729(a)(2) in Allison Engine. This argument, of course, presupposes that the pre-FERA Section 3729(a)(2), and not the post-FERA Section 3729(a)(1)(B), applies to this case.

While a few courts have woodenly applied the retroactivity language of Section 3729(a)(1)(B) to claims or cases pending on or after June 7, 2008, see, e.g., United States ex rel. Stephens v. Tissue Sciences Lab., Inc., 664 F. Supp. 2d 1310, 1315 n. 2 (N.D. Ga. 2009) and United

---

[1] In Mr. Carell's memorandum in support of his Motion (which Diversified adopts), he admits that "[u]nder FERA, a FCA plaintiff 'need only plead (and prove) a knowing state of mind (as opposed to a specific intent to defraud')." (Docket No. 205, at 3, quoting United States ex rel. Carpenter v. Abbott Labs, Inc., 2010 U.S. Dist. Lexis 71906, at ** 16-18 (D. Mass. July 16, 2010)).

7

States *ex rel.* Westrick v. Second Chance Body Armor, Inc., 685 F. Supp. 2d 129, 140 (D.D.C. 2010), most courts which have addressed the matter have concluded that the new clause applies only to a request for payment, not pending cases. See, e.g., Hopper v. Solvay Pharm., Inc., 588 F.3d 1318, 1327 n.3 (11th Cir. 2009); Mason v. Medline Indus., Inc., 731 F. Supp. 2d 730, 734-35 (N.D. Ill. 2010); United States *ex rel.* Carpenter, 723 F. Supp. 2d at 402; United States *ex rel.* Bender v. N. Am. Telecomms., Inc., 2010 WL 4365531, at *3 n.3 (D.D.C. Nov. 4, 2010); United States *ex rel.* Burroughs v. Cent. Ark. Dev. Council, 2010 WL 1542532, at **2-3 (E.D. Ark. Apr. 19, 2010); United States v. Chubb Ins., 2010 WL 1076228, at *10 n.4 (D.N.J. March 22, 2010); United States *ex rel.* Compton v. Circle B Enter., Inc., 2010 WL 942293, at *2 n. 5 (M.D. Ga. March 11, 2010); United States *ex rel*. Sanders v. Allison Engine Co., 667 F. Supp. 2d 747, 751-52 (S.D. Ohio 2009); United States v. Aguillon, 628 F. Supp. 2d 542, 551 (D. Del. 2009). This Court joins that majority and concludes that the "claims" language in the amendments to the FCA means exactly that – claims. Several factors compel that conclusion.

First, "[t]he pre- and post-FERA versions of the FCA define 'claim' similarly," with a "claim" meaning "'any request or demand, whether under a contract or otherwise, for money or property ... [that] is presented to an officer, employee, or agent of the United States[.]'" United States *ex rel*. Bennett v. Medtronic, Inc., 2010 WL 3909447 at *12 (S.D. Tex. Sep. 30, 2010) (quoting 31 U.S.C. § 3729(b)(2)). Second, and somewhat relatedly, "[t]he titles of § 3729 ('False *Claims*') and the Act to which it belongs ('False *Claims* Act') further underscore that 'claims' is a term of art in FCA cases that refers to claims made to the government for money or property." United States *ex rel.* Putman v. Eastern Idaho Reg. Med. Ctr., 696 F. Supp. 2d 1190, 1196 (D. Idaho 2010) (emphasis in original). Obviously, this lawsuit, which is brought by the United States, makes

8

no such request.

Third, and most fundamentally, in enacting FERA, Congress evidenced its understanding of the difference between a claim and a lawsuit. Indeed, immediately after providing that the amendments to Section 3729(a)(2) would apply to *claims* pending after June 7, 2008, it provided that other provisions "shall apply to *cases* pending on the date of enactment." Pub. L. No. 111-21, 123 Stat. at 1625, emphasis added. See, United States *ex rel.* Drake v. NSI, Inc., 736 F. Supp. 2d 489, 497 (D. Conn. 2010) ("if FERA § 4(f)(2) [§ 3729(a)(1)(A)] applies to 'cases,' how can FERA § 4(f)(1) [§ 3729(a)(1)(B)] define 'claims' to mean 'cases'?").

The conclusion that the FERA amendments do not apply to the allegations in Count II brings into play the decision in Allison Engine. However, and contrary to Defendants' contention, "[t]he strict standard announced by the Supreme Court in Allison Engine" (Docket No. 205, at 6) does not mandate dismissal of that Count.[2]

In Allison Engine, the Supreme Court considered Section 3729(a)(2) in the context of a subcontractors' submission of false claims to a general contractor, where the general contractor paid the subcontractor with government funds, but where there was no evidence that false claims were ever submitted to the government itself. The Court ruled that for purposes of this statutory subsection,

> the defendant must make the false record or statement 'to get' a false or fraudulent

---

[2]Taken to its logical extreme, Defendants' position appears to be that post-Allison Engine, an FCA case cannot be brought against one who seeks reimbursement from a fiscal intermediary because the claim for reimbursement is made to that intermediary (here Palmetto), and not the Government. The Court does not read Allison Engine that broadly, particularly since Medicare intermediaries act as agents of the United States in administering the program. See 42 C.F.R. 421.5(b); Aguillon, 628 F. Supp. 2d at 527 (collecting cases indicating that claims submitted to Medicare and Medicaid are claims to the United States).

9

claim 'paid or approved by the Government.' 'To get' denotes purpose, and thus a person must have the purpose of getting a false or fraudulent claim 'paid or approved by the Government' in order to be liable under § 3729(a)(2).

Allison Engine, 128 S.Ct. at 2128. This does not mean, however, that the claim must be made directly to the government, only that "a defendant must intend that the Government itself pay the claim":

> What § 3729(a)(2) demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting 'a false or fraudulent claim paid or approved by the Government.' Therefore, a subcontractor violates § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim. If a subcontractor or another defendant makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim 'by the Government.' In such a situation, the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability. Recognizing a cause of action under the FCA for fraud directed at private entities would threaten to transform the FCA into an all-purpose antifraud statute. Our reading of § 3729(a)(2), based on the language of the statute, gives effect to Congress' efforts to protect the Government from loss due to fraud but also ensures that 'a defendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct.'

Id. at 2128 & 2130 (citation and footnote omitted).

Here, when the facts in the Second Amended Complaint are construed in Plaintiff's favor, Plaintiff states a plausible claim for relief under Section 3729(a)(2). The allegations are that Defendants submitted false Cost Reports to receive reimbursement for the unlawful payment of management fees. While the Cost Reports were submitted to Palmetto, those records undoubtedly were submitted with the intention that the Government, not Palmetto, pay the claims. Whether, in the words of Allison Engine, "the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability," id. at 2130, is

10

something which may need to be considered after the proof is developed. Likewise, whether the Government relied, in some fashion, on Defendants' submission in making payments is not something which can be readily discerned merely from the pleadings. For now, and again in the words of Allison Engine, it cannot be said that Plaintiff seeks to hold Defendants "answerable for anything beyond the natural, ordinary and reasonable consequences of [their] conduct.'" Id. (citation omitted).

**B.   Count I – 31 U.S.C. § 3729(a)(1) / 31 U.S.C. § 3729(a)(1)(A)**

To prevail on Count I, Plaintiff must establish that Defendants presented, or caused to be presented, a false or fraudulent claim for payment or approval to the government. 31 U.S.C. § 3729(a)(1). Relying heavily on Totten which Defendants claim "was implicitly upheld by the Supreme Court in Allison Engine" (Docket No. 213, at 5), Defendants argue that the claims at issue (the Cost Reports) were not presented to the Government.

Again Defendants read Allison Engine too broadly because the Supreme Court did not explicitly endorse Totten's holding that a claim presented to Amtrak is not a claim presented to the United States within the meaning of the presentment clause under Section 3729(a)(1). In fact, the Supreme Court discussed Section 3729(a)(1) only briefly, and substantively only for the proposition that Section 3729(a)(1) has a presentment requirement. It did not define that requirement, other than to say that the statute "requires a plaintiff to prove that the defendant 'present[ed]' a false or fraudulent claim to the Government[.]" Allison Engine, 128 S. Ct. at 2129.

Moreover, Totten dealt with block-grant funding for Amtrak, not Medicare. Specifically, the allegations were that two companies delivered defective rail cars to Amtrak and that, by submitting invoices to Amtrak for payment, the companies violated Section 3729(a)(1). In holding

11

that Section 3729(a)(1) requires that claims be presented to an officer or employee of the Government, the court in Totten did not state that an FCA claim can never be based upon a false claim submitted to an intermediary. As one court has explained:

> Totten, however, does not appear to stand for the proposition that claims must be presented by the alleged tortfeasor directly to the federal government in order to be actionable under the FCA. Indeed, both the majority and dissent in Totten acknowledge that presentment can occur directly or indirectly, as indicated by the statute itself through its use of the phrase "causes to be presented" in Subsection (a)(1), and "causes to be made or used" in Subsection (a)(2). Rather, Totten held, *inter alia*, that a false claim ultimately must be presented to the federal government (whether directly or via an intermediary) in order for liability to attach, and that presentment is a prerequisite to liability under both Subsections (a)(1) and (a)(2) of the FCA.

United States *ex rel.* Tyson v. Amerigroup Ill., Inc., 2005 WL 2667207 at *1 (N.D. Ill. 2005); see also United States v. Sequel Contractors, Inc., 402 F. Supp. 2d 1142, 1150 (C.D. Cal. 2005) (citation omitted, emphasis in original) ("Totten did not require that the defendants themselves directly present the claim to the federal government," only "that *someone* must directly present a false claim to the federal government in order for liability under the FCA to arise").

Obviously, "claims for reimbursement under the Medicare and Medicaid programs are not the same" as the mechanism for payment at issue in Totten. United States v. Cathedra Rock Corp., 2007 WL 4270784 at *3 (E.D. Mo. Nov. 30, 2007); see also U.S. *ex rel*. Ven-A-Care v. Actavis Mid Atl. LLC, 659 F. Supp. 2d 262, 268 -269 (D. Mass. 2009) (collecting cases) ("Virtually every court that has considered the issue after Totten has found that Medicaid fraud claims are actionable under § 3729(a)(1)."). Indeed, post-Totten, the Sixth Circuit found that fraudulent Medicare claims based upon false Cost Reports fall within the "broad scope of the FCA." United State *ex rel.* A+ Homecare, Inc., 400 F.3d 428, 457 (6th Cir. 2005). In arriving at its conclusion, the court wrote:

> A party cannot file a knowingly false claim on the assumption that the fiscal

intermediary will correctly calculate the value in the review process. . . . Such a result would shift the burden of cost calculation from the provider to the fiscal intermediary and encourage the filing of false claims, which is directly at odds with the stated goal of the FCA.

Id. at 447.

Plaintiff alleges that Defendants knowingly or with reckless disregard presented, or caused to be presented, false or fraudulent Cost Reports to receive reimbursement and that the United States suffered damages as a result of those submissions. This is sufficient to establish a plausible claim for relief under Section 3729(a)(1)(A).

### IV. CONCLUSION

On the basis of the foregoing, the pending Motions for Partial Judgment on the Pleadings (Docket Nos. 204 & 208) will be denied.

_____
THOMAS A. WISEMAN, JR.
UNITED STATES DISTRICT JUDGE